UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANIEL FRIAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:12-CV-1296-B |
| | § | |
| ARTURO TORREZ, United States | § | |
| Customs and Border Protection Officer, | § | |
| and UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss (doc. 14). For the reasons that follow, the Motion is **GRANTED in part** and **DENIED in part as follows.**

## I.

## BACKGROUND [1]

Plaintiff Frias brings this action against Defendants Arturo Torrez and the United States of America. Plaintiff Frias, a Hispanic male, complains that he was stopped and arrested in violation of his Fourth Amendment right to be free of unreasonable searches and seizures. Arturo Torrez is a Customs and Border Protection Officer. On April 28, 2010, Frias and a passenger were driving on a highway in Abilene, Texas over 250 miles away from the Mexican border. According to the facts alleged in the amended complaint, Frias was abiding by all traffic laws, there was nothing suspicious

---

[1] The Court draws its factual account from the allegations contained in Plaintiff's Amended Complaint (doc. 11). *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002) (noting that when considering a motion to dismiss pursuant to Rule 12(b)(6), "all facts pleaded in the complaint must be taken as true.").

about the vehicle he was driving, and there was no legal reason for Officer Torrez to pull Frias over.

Officer Torrez was in his patrol car, stopped on the opposite side of the highway when Frias drove past him. Torrez turned his vehicle around and pulled up next to Frias and looked into Frias' vehicle as Frias kept his eyes forward. Torrez then pulled behind Frias and turned on his emergency lights, initiating a traffic stop. Frias alleges that Torrez' only reason for pulling him over was his Hispanic appearance.

Once stopped, Torrez approached Frias' truck from the passenger side and asked in Spanish whether Frias had any identification. Frias presented a valid New Mexico driver's license to Torrez. Torrez proceeded to walk around to the driver's side and told Frias to put his hands out the window, which Frias did. Torrez then handcuffed Frias and asked if he had any other form of identification. Frias responded he did not. Torrez told Frias that if he lied to him regarding the next question, he would spend years in jail. Torrez then inquired about Frias' immigration status, specifically asking if Frias was "legal." The amended complaint states only that Frias "responded to that question." Pl. Am. Comp. ¶ 73. After this unspecified response, Torrez pulled Frias from the truck and placed him in the Customs and Border Protection ("CBP") vehicle and departed the scene.

Frias further alleges that he was stopped and arrested because of his Hispanic appearance as part of a regular pattern and practice of CBP patrol agents in Texas. Frias alleges that CBP agents stop Hispanics without reasonable suspicion to inquire about their immigration status. Frias describes other instances in which Officer Torrez stopped and interrogated Hispanic individuals without reasonable suspicion. *Id.* at ¶¶ 86-89.

Frias avers that he submitted an administrative complaint to the Customs and Border Protection agency that was not timely addressed before he filed this action, as required by the Federal

Tort Claims Act ("FTCA") in 28 U.S.C. § 2675. Thus, Frias alleges he exhausted his administrative remedies and this suit is timely. Pl. Am. Comp. ¶ 11. Defendants do not refute Frias' exhaustion of administrative remedies.

Frias asserts five claims against Defendants in his amended complaint, all arising from the April 28, 2010 stop and arrest. Frias' first two claims are against the United States and Torrez for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (2010), and the Administrative Procedures Act, 5 U.S.C. §§ 500-596 (2000). First he claims his arrest was in violation of 8 U.S.C. § 1357(a)(2) and second that Torrez stopped Frias without reasonable suspicion and not for the purposes of patrolling the border, therefore exceeding his authority under 8 U.S.C. § 1357(a)(3). Frias seeks a declaration of his rights in both of these claims. Frias' third claim is for unlawful seizure against Torrez individually under the Fourth Amendment pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 396 (1971). Frias' fourth and fifth claims are against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 (2000), for false imprisonment and assault, respectively.

Plaintiff Frias has responded (doc. 22) to Defendants' motion to dismiss and Defendants have replied (doc. 24). The motion is ripe for decision.

II.

LEGAL STANDARD

A.  *Motion to Dismiss under Rule 12(b)(1)*

"The party asserting jurisdiction bears the burden of proof on a 12(b)(1) motion to dismiss." *Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011). "The court takes as true all of the allegations of the complaint and the facts set out by the plaintiff." *Id.* The claims will not be dismissed "unless it appears certain that the plaintiff[] cannot prove any set of facts in support of [his] claim which would entitle [him] to relief." *Id.* (internal quotations omitted).

B.  *Motion to Dismiss under Rule 12(b)(6)*

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the court to dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). In order to survive such a motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. Rule Civ. P. 8(a)(2)).

## III.

## ANALYSIS

A.      *Subject matter jurisdiction*

Defendants argue that the Immigration and Nationality Act, specifically 8 U.S.C. § 1252(a)(2)(B)(ii) (West 2005),[2] prevents this Court from exercising subject matter jurisdiction over Plaintiff Frias' claims. Defendants state that § 1252(a)(2)(B)(ii) prevents judicial review of any action in the subchapter that is within the discretion of the Attorney General. *See id.* Defendants argue that the acts of stopping and arresting Frias were within the discretion of immigration officer Torrez, and thus the Attorney General.[3] Consequently, Defendants argue that because the immigration officer here made a discretionary decision to arrest Frias, under § 1252(a)(2)(B)(ii) this Court lacks jurisdiction to hear this case.

---

[2] In relevant part, 8 U.S.C. 1252(a)(2)(B) states:
   Notwithstanding any other provision of law . . . regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review–
   . . .(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

[3] Defendants cite to 8 U.S.C. § 1226 for the authority to make arrests with a warrant and that such decisions are discretionary, and then cite to 8 U.S.C. § 1357(a)(2) for the agent's authority to make warrantless arrests.

Defendants fail to cite to any precise language in either the statutory text or the case authority that supports this interpretation of § 1252(a)(2)(B)(ii), while Plaintiff Frias directs the Court to multiple decisions rejecting this very argument. "[D]ecisions that violate the Constitution cannot be 'discretionary,' so claims of constitutional violations are not barred by § 1252(a)(2)(B)." *Kwai Fun Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004). A district court held that "[b]ecause [immigration] officials do not have discretion to violate the constitution, [Section 1252(a)(2)(B)(ii)] will not bar [plaintiff's] claims based on unconstitutional conduct by these officials." *El Badrawi v. Dep't Homeland Sec.*, 579 F. Supp. 2d 249, 268-70 (D. Conn. 2008). Similarly, the district court in *Diaz-Bernal* concluded that the constitutional claims against Immigration and Customs Enforcement officers for violation of the Fourth and Fifth Amendments were not barred by Section 1252(a)(2)(B)(ii). *Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106, 126 (D. Conn. 2010). Likewise, a plaintiff's Fifth Amendment claim was not barred when the plaintiff alleged federal agents subjected him to physical and psychological abuse and knowingly supplied false information to prolong his detention. *Khorrami v. Rollince*, 493 F. Supp. 2d 1061, 1070 (N.D. Ill. 2007). "These are not the sorts of discretionary actions Congress sought to shield from judicial review." *Id.* "It is, of course, a tautology that a federal official cannot have discretion to behave unconstitutionally or outside the scope of his delegated authority." *Myers & Myers, Inc. v. U. S. Postal Serv.*, 527 F.2d 1252 (2d Cir. 1975) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170-71, 2 L.Ed. 60 (1803)).

Here, Plaintiff Frias complains that his Fourth Amendment right to be free of unreasonable seizures was violated when Officer Torrez allegedly stopped and arrested Frias without reasonable suspicion or probable cause. All claims in his complaint rest entirely on the stop and arrest that took

place on April 28, 2010; there are no claims resulting from any removal proceeding or any other action by an agent of the Attorney General. Frias avers, and Defendants do not refute, that there is not even a pending removal proceeding against him. Pl. Resp. 15, n.9. Thus, because Frias complains only of alleged constitutional violations to support each of his claims and his claims do not involve removal or immigration enforcement actions, the Court concludes, for the same reasons stated above in *El Badrawi*, *Diaz-Bernal*, *Khorrami*, and *Myers & Myers*, that Section 1252(a)(2)(B)(ii) does not divest this Court of subject matter jurisdiction. The Defendants' motion is thus denied as to this argument regarding the Court's subject matter jurisdiction.

B.  *Bivens claim for violation of the Fourth Amendment*

Frias complains Torrez violated his civil rights, specifically his Fourth Amendment right to be free of unreasonable searches and seizures, when Defendant Torrez allegedly stopped Frias in his vehicle without reasonable suspicion and then handcuffed and arrested Frias without probable cause. Pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 396 (1971), Frias brings this Fourth Amendment claim against Torrez personally. Defendant Torrez moves to dismiss Frias' *Bivens* claim. Defendant argues that a *Bivens* remedy is not automatic and that such remedy should only be inferred if (1) there is no "alternative, existing process for protecting" the constitutional interest at issue and (2) there are no "special factors counseling hesitation" against a judicially created remedy. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Defendant Torrez argues that the Immigration and Nationality Act provides an alternative, existing process to protect Frias' constitutional interests and that the political branches' plenary power over immigration is a special factor counseling hesitation. Defendant Torrez does not cite a single case in support of these propositions. *See* Def. Br. 5-7.

The court in *Diaz-Bernal* faced a nearly identical argument challenging the appropriateness

of a *Bivens* remedy in the immigration context. 758 F. Supp. 2d at 127-29. Addressing the first prong of *Wilkie*, the *Diaz-Bernal* court stated that "the [Immigration and Nationality Act] does not govern the specific claims at issue (that is, constitutional violations that preceded removal proceedings). If a *Bivens* remedy were precluded, the present plaintiffs would have no forum in which to seek a remedy for the defendants' alleged constitutional violations." 758 F. Supp. 2d at 128-29. The same holds true here for Frias. The alleged constitutional violation preceded any removal actions or decisions and therefore, without a *Bivens* action, Frias would have no avenue to seek redress. *See id.* Therefore, Frias' *Bivens* action against Torrez does not appear foreclosed under the first consideration in *Wilkie*.

The second *Wilkie* factor is that a *Bivens* remedy must not be allowed if there are "special factors counseling hesitation" against a judicially created remedy. Despite Congress' "great control over immigration, including over removal proceedings" it does not have control over *all* claims brought by immigrants. *Diaz-Bernal*, 758 F. Supp. 2d at 129. Moreover, as addressed in the foregoing analysis on subject matter jurisdiction, to the extent there was any immigration enforcement action by Torrez against Frias, it necessarily occurred *after* the alleged constitutional violations that form the sum and substance of his claims. In other words, Congress' plenary power over immigration enforcement does not operate as a bar to Frias' *Bivens* action in this instance because there is no indication that Frias' alleged injury was sustained as a result of, or even in connection with, any immigration enforcement activity by Torrez or the federal government.

Numerous cases support the proposition that a foreign national may pursue a *Bivens* claim against immigration or Border Patrol officers. *See Martinez-Aguero v. Gonzalez*, 459 F.3d 618 (5th Cir. 2006) (allowing Mexican national's *Bivens* claim against border patrol agents for wrongful arrest and

use of excessive force to proceed past summary judgment); *see also Chavez v. United States*, 683 F.3d 1102 (9th Cir. 2012)(permitting *Bivens* claim against border patrol agent for racially motivated seizure); *see also Sanchez v. Rowe*, 651 F. Supp. 571 (N.D. Tex. 1986) (border patrol agent and United States held liable for *Bivens* and FTCA claims brought by resident alien). Because any decision or action by the Attorney General necessarily came *after* the alleged injury and based on the ample authority allowing *Bivens* claims to proceed against immigration officers, this Court concludes that there is no "special factor counseling hesitation" against a *Bivens* remedy. Thus, Frias has satisfied the Court that the factors of concern to the court in *Wilkie* have no bearing in this context and Frias' *Bivens* claim survives this particular challenge by Torrez and the Defendants' motion is denied in this regard.

C. *Qualified Immunity*

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When the defendant raises the defense of qualified immunity, the burden shifts to the "plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). Because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), questions of qualified immunity must be resolved "at the earliest

possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). When a defendant asserts qualified immunity in a motion to dismiss, "it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *McClendon*, 305 F.3d at 323(internal quotations omitted).

Here, Defendant Torrez is only moving for qualified immunity for the arrest, not the stop. Def. Br. 8 n.1. Thus, even if the Court were to grant Torrez qualified immunity at this stage, he would have to continue defending himself for the stop and thus defeat one of the primary aims of qualified immunity. *See Pearson*, 555 U.S. at 231 (the interest to "shield officials" from the burdens of litigation). Furthermore, based only on the Plaintiff's amended complaint and argument of the parties, certain of the key facts surrounding the arrest are difficult to discern. For example, it is not at all clear from the pleadings or the parties' briefing how Frias responded to Torrez' question regarding Frias' legal status in this country. For these reasons, the Court concludes that the qualified immunity issue is more appropriately resolved via summary judgment proceedings. *See Hunter*, 502 U.S. at 227. Thus, the Court reserves ruling on Torrez' entitlement to qualified immunity pending summary judgment briefing.

D. *FTCA Claims*

"As the sovereign, the United States is immune from suit unless, and only to the extent that, it has consented to be sued." *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Through the Federal Tort Claims Act ("FTCA"), the United States has consented to suits "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28

U.S.C. § 1346(b)(1).[4] The FTCA waives sovereign immunity for intentional torts of law enforcement and investigative officers, such as those alleged here for assault and false imprisonment. 28 U.S.C. § 2680(h). Border Patrol agents are properly categorized as law enforcement officers under the FTCA. *Sanchez v. Rowe*, 651 F. Supp. 571, 573 (N.D. Tex. 1986). In FTCA actions, the substantive law of the state where the alleged injury occurred is controlling. 28 U.S.C. § 1346(b)(1).

Plaintiff Frias brings claims of false imprisonment and assault against the United States pursuant to the FTCA based on Officer Torrez' conduct. Frias states that the United States has waived its sovereign immunity for such intentional torts committed by Torrez, a law enforcement officer within the meaning of the FTCA. *See* 28 U.S.C. § 2680(h). Defendant United States only argues that Frias has not stated an actionable tort claim for assault or false imprisonment under Texas law.

1.  Assault

Under Texas law "[a]ssault elements are the same in both civil and criminal cases." *Cameron Cnty. v. Ortega*, 291 S.W.3d 495, 498 (Tex. App.–Corpus Christi 2009, no pet.). Assault occurs if a person "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." Tex. Penal Code Ann. § 22.01(a)(3) (Vernon 2009). Officers are privileged to use a reasonable amount of force to conduct their duties. *Texas Dept. of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001)

---

[4] As a jurisdictional prerequisite before bringing an FTCA claim, the claimant must exhaust his administrative remedies. 28 U.S.C. § 2675(a). Here, Frias avers, and Defendants do not refute, that he submitted a complaint to the CBP that was not responded to within six months, thus meeting the administrative exhaustion requirement. Pl. Am. Comp. ¶ 11; *see* 28 U.S.C. § 2675(a) ("The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.").

("A police officer is privileged to use force to the degree he reasonably believes is necessary to make an arrest, taking care that the force used is commensurate with the necessity.").

Frias alleges that the offensive contact occurred when Torrez handcuffed him. Frias does not allege that the handcuffs were too tight nor that Torrez otherwise physically contacted him. The facts as pled and viewed in a favorable light to Frias indicate that Torrez was alone when he stopped and confronted Frias and his passenger beside the highway. The pleadings and the parties' briefing indicate that they do not dispute that Torrez handcuffed Frias just before asking him about his immigration status. Thus, even assuming the facts as pled to be true and viewing them in the light most favorable to Frias, Torrez' decision to handcuff Frias before questioning his immigration status does not appear unreasonable. As a lone law enforcement officer in the field, Torrez had the authority to reasonably handcuff a suspect. *See United States v. Webster*, 162 F.3d 308, 332 (5th Cir. 1998); *see also United States v. Jordan*, 232 F.3d 447, 450 (5th Cir. 2000) ("[h]andcuffing a suspect does not automatically convert an investigatory detention into an arrest requiring probable cause."). Therefore, the Court concludes that Frias has not alleged sufficient facts to establish that Torrez' contact exceeded his authority and privilege as a law enforcement officer to ensure his own safety while questioning a suspect. *See id.* Thus, Defendants' motion to dismiss Frias' FTCA assault claim is granted.

2. False imprisonment

The elements of false imprisonment are "(1) willful detention; (2) without consent; and (3) without authority of law." *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985). When an officer stops a person, the Fourth Amendment protection from unreasonable searches and seizures "is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity

may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotations omitted). For an arrest, an officer must have probable cause to satisfy the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Frias' claim of false imprisonment is two-fold: first, he alleges that he was falsely imprisoned when Torrez allegedly stopped his vehicle without reasonable suspicion or probable cause, and second, that he was falsely imprisoned when Torrez allegedly arrested him without probable cause.

As to the stop, Frias' amended complaint is replete with allegations both that the detention was willful and that it was without his consent. The third element, that the imprisonment be "without authority of law," requires more discussion. On the alleged facts taken as true, Frias was abiding by all pertinent traffic laws while driving and was pulled over by Torrez solely based upon his Hispanic appearance. As pled, these facts demonstrate that Torrez stopped Frias without reasonable suspicion or probable cause. Therefore, Frias has adequately alleged that the stop was outside the authority of the law. *See Castillo*, 693 S.W.2d at 375. The Defendants' Motion to Dismiss the false imprisonment claim stemming from the stop is therefore denied.

Frias' false imprisonment claim based on his arrest, on the other hand, is distinguishable. Frias claims that he was falsely imprisoned when he was handcuffed and then taken into custody after questioning. Handcuffing "does not automatically convert an investigatory detention into an arrest requiring probable cause." *Jordan*, 232 F.3d at 450. The relevant inquiry in determining if the handcuffing was an arrest is whether the officer was "unreasonable in failing to use less intrusive procedures to safely conduct" the investigation. *Id.* As stated in the previous section, Torrez was a lone officer confronting a suspect about his immigration status. Taking the facts as pled to be true, Frias has failed to demonstrate that Torrez' action in handcuffing him before asking him about his

- 13 -

immigration status was unreasonable or that it even constituted an arrest requiring probable cause at that point in time. *See id.*

So far as Torrez' act of taking Frias into custody, in order to state a claim for false imprisonment for the arrest, Frias must allege that Torrez' act was "without authority of law." *Castillo*, 693 S.W.2d at 375. Frias alleges that, before he was removed from his vehicle and arrested, Torrez asked him if he was "legal." Pl. Am. Comp. ¶ 72. Frias' complaint does not contain the content of Frias' response to this question. Frias must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Court concludes that without alleging the answer to the immigration status question, Frias has failed to plead enough facts to state a claim of false imprisonment for the arrest. Defendants' motion to dismiss the false imprisonment FTCA claim related to the arrest is granted.

E.     *Declaratory relief claims*

Frias seeks a declaratory judgment against the United States for alleged violations of 8 U.S.C. § 1357(a) based upon the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. The Defendants do not challenge the Court's subject matter jurisdiction to entertain this claim.[5] The Court will, nevertheless, *sua sponte*, examine its subject matter jurisdiction by determining whether the United States has waived sovereign immunity for declaratory relief pursuant to the Administrative Procedure Act

The Declaratory Judgment Act does not provide an independent source of federal

---

[5] Defendant Torrez' only articulated challenge to the declaratory relief claims is that Frias has failed to plead a future injury. There is no such requirement for declaratory relief. *See Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (stating the requirements for declaratory relief). As such, the motion to dismiss the declaratory relief claims is denied as against Torrez individually.

jurisdiction. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Accordingly, Frias must demonstrate that an independent source of jurisdiction exists. *See Kielczynski v. CIA*, 128 F. Supp. 2d 151, 155 (E.D.N.Y. 2001). To demonstrate jurisdiction over the United States for declaratory relief, Frias directs the Court to the APA.

The APA waives federal sovereign immunity and creates a cause of action for judicial review for a "person suffering legal wrong because of agency action." 5 U.S.C. § 702. There are two separate requirements for a cause of action under § 702. First, the person must identify some "agency action" that affects him. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (quoting 5 U.S.C. § 702). When "review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'" *Id.* (citing 5 U.S.C. §§ 702, 704). The Court addresses four factors to determine when agency action is final: "(1) whether the challenged action is a definitive statement of the agency's position, (2) whether the action has the status of law with penalties for noncompliance, (3) whether the impact on the plaintiff is direct and immediate, and (4) whether the agency expects immediate compliance." *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149-53 (1967) (overruled on other grounds)). The second requirement under the APA is that the person must "show he has 'suffer[ed] legal wrong' because of the challenged agency action, or is 'adversely affected or aggrieved' by that action 'within the meaning of the relevant statute.'" *Lujan*, 497 U.S. at 883 (quoting 5 U.S.C. § 702).

Frias fails to elaborate how the APA waives the United States' sovereign immunity in this case. Frias does not allege any "agency action" as defined by the APA, much less a "final agency action." The only mention of the APA throughout his complaint is in passing; never does the

complaint apply facts to the provisions of the APA. Frias' entire cause of action is based solely on the allegedly unlawful stop and arrest conducted on April 28, 2010; as alleged, there is no "agency action" and therefore the APA is inapplicable. The burden to establish subject matter jurisdiction as to Defendant United States is on Plaintiff Frias. *See Life Partners Inc.*, 650 F.3d at 1029. The Court concludes Frias has failed to meet his jurisdictional burden for declaratory relief pursuant to the APA against Defendant United States. Thus, the declaratory judgment claims against the United States are hereby dismissed.[6]

## IV.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (doc. 14) is **GRANTED in part** and **DENIED in part**. As to Defendants' argument that this Court lacks subject matter jurisdiction pursuant to 28 U.S.C. 1252(a)(2)(B)(ii), that argument is rejected as stated above. The declaratory relief claims against the United States are dismissed for lack of subject matter jurisdiction and since these claims are barred as a matter of law, repleading will not be permitted. Frias' FTCA assault claim based on Torrez handcuffing Frias is dismissed without prejudice because Frias has failed to plead facts demonstrating Torrez exceeded his authority and privilege as a law enforcement officer. The FTCA false imprisonment claim stemming from the arrest – as opposed to the stop– is dismissed without prejudice for repleading because Frias failed to plead facts establishing the imprisonment was without authority of law. The FTCA false imprisonment claim stemming from the stop survives

---

[6] This ruling does not affect Frias' claim for declaratory relief against Torrez individually because sovereign immunity is not a bar with respect to individual defendants. *See Diaz-Bernal*, 758 F. Supp. 2d at 119 n.7.

- 16 -

because Frias adequately alleged an absence of reasonable suspicion for the stop; therefore, Defendants' motion in this regard is denied. The Court withholds its judgment as to Torrez' defense of qualified immunity until summary judgment. Defendants' motion is otherwise denied. Plaintiff Frias is hereby given leave to amend his complaint within 30 days to cure the deficiencies outlined herein. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567-68 (N.D. Tex. 2005).

**SO ORDERED.**

**SIGNED: February 6, 2013.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE